IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 26-cv-02795-KAS

CARLOS A. RODRIGUEZ PADRON,

Applicant,

v.

DAVID VENTURELLA,[1] Acting Director of U.S. Immigration and Customs Enforcement,
GEORGE VALDEZ, Director of ICE Denver Field Office, and
JUAN BALTAZAR, Warden of the Denver Contract Detention Center,

Respondents.

---

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) (the "Application") filed *pro se* by Applicant, Carlos A. Rodriguez Padron, on June 22, 2026. The Court must construe the Application liberally because Applicant is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. After reviewing the pertinent portions of the record in this case, the Court FINDS and CONCLUDES that the Application be **GRANTED in part**.

## I. BACKGROUND

Applicant is a native and citizen of Cuba. (ECF No. 14-1 at ¶ 4). On November 30, 2010, Applicant was admitted to the United States as a refugee and became a lawful

---

[1] Pursuant to Fed. R. Civ. P. 25(d), David Venturella is substituted as a Respondent.

permanent resident on June 2, 2014. (*Id.* ¶¶ 5, 6).

On September 14, 2016, Applicant was convicted in the U.S. District Court for the District of Nebraska of distribution of 5 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1). (*Id.* ¶ 7). He was sentenced to 97 months in prison followed by four years of supervised release. (*Id.*).

On June 22, 2023, ICE encountered Applicant while conducting routine criminal records checks and detained him. (*Id.* ¶ 8).

On July 18, 2023, removal proceedings were initiated against Applicant with a Notice to Appear, charging him with being removable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) (alien who is convicted of an aggravated felony at any time after admission) and 8 U.S.C. § 1227(a)(2)(B)(i) (alien who at any time after admission has been convicted of a violation of any law or regulation of a State, the United States, or a foreign country relating to a controlled substance, other than a single offense involving possession for one's own use of 30 grams or less of marijuana). (*Id.* ¶ 9).

On August 15, 2023, an immigration judge ordered Applicant removed to Cuba. (*Id.* ¶ 10). Because Applicant waived his right to appeal, the order of removal became administratively final the same date. (*Id.*).

On September 9, 2023, ICE released Applicant on an order of supervision ("OSUP") based on a determination that his removal to Cuba was not likely to occur in the reasonably foreseeable future. (*Id.* ¶ 11).

On December 11, 2025, upon his release from federal prison in another matter, ICE arrested Applicant and detained him to effectuate his removal from the United States.

(*Id.* ¶ 18).

On January 3, 2026, ICE served Applicant with a Form I-229(a), Warning for Failure to Depart, which informs the noncitizen of the consequences of taking any action to prevent or hamper his removal, as well as a Notice of File Custody Review ("POCR"), advising Applicant that ICE would complete a review of his custody status. (*Id.* ¶ 19). At his Post Order Custody Review ("POCR") on January 16, 2026, ICE determined that Applicant's detention was justified and that Applicant failed to demonstrate he would not pose a significant risk of flight or a danger to the community if released pending removal. (*Id.* ¶ 20). On the same day, ICE served Applicant with a notice of third country removal to Mexico, which Applicant refused to sign, claiming a fear of removal to Mexico. (*Id.* ¶ 21). He was referred to U.S. Citizenship and Immigration Services ("USCIS") for a reasonable fear interview. (*Id.*).

On January 28, 2026, USCIS determined that Applicant's claim of fear was not reasonable, and ICE therefore proceeded with effecting his removal to Mexico. (*Id.* ¶¶ 22-23).

On February 18, 2026, Applicant was staged at the Florence Service Processing Center ("Florence SPC") in Florence, Arizona, for removal to Mexico as a third country alternative to Cuba. (*Id.* ¶ 24). Applicant failed to comply, so ICE was unable to effectuate Applicant's removal at that time, and on February 19, 2026, he was returned to the Denver Contract Detention Facility. (*Id.* ¶ 25).

On April 16, 2026, ICE served Applicant with a Notice of Failure to Comply, which informed Applicant that he would remain in ICE custody until he could demonstrate he

was making reasonable efforts to comply with ICE to effectuate his removal to Mexico. (*Id.* ¶ 36). Additionally, his POCR was halted due to Applicant's failure to comply. (*Id.*).

On April 19, 2026, ICE again served Applicant with another Form I-229(a), Warning for Failure to Depart and Notice of File Custody Review, both of which Applicant refused to sign. (*Id.* ¶ 27).

According to Respondents, the government of Mexico will accept Applicant for removal, and ICE continues to make efforts to remove him to a third country so long as Applicant complies and signs the Notice of Removal to Mexico. (*Id.* ¶ 28).

Applicant initiated this habeas corpus action on June 22, 2026. (ECF No. 1). In the Application, he claims that (1) "Respondents revocation of [Applicant's] supervised release without consideration of his individualized facts and circumstances violated the Administrative Procedure Act;" (2) "Respondents violated his rights to due process by re-detaining him without first providing him with an individualized pre-detention hearing;" and (3) "[Applicant's] continued detention by Respondents is unlawful and contravenes 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in Zadvydas, because the six-month presumptively reasonable period for continued removal efforts has long expired." (*Id.* at 3). As relief, he seeks immediate release from custody and an order not to transfer him outside the jurisdiction of this Court while the Application is pending. (*Id.* at 10-11).

On July 1, 2026, Respondents were ordered to show cause why the Application should not be granted. (*See* ECF No. 5). After being granted an extension of time (ECF No. 9), Respondents filed a Response to Order to Show Cause on July 14, 2026 (ECF No. 14). Respondents argue that the Application should be denied because Applicant has

not met his burden under *Zadvydas v. Davis,* 533 U.S. 678 (2001). (*Id.*). Respondents do not address Applicant's claims regarding revocation of his supervised release and subsequent redetention.

On August 18, 2026, Respondents were ordered to file a supplemental response addressing Applicant's claim that Respondents failed to abide by its regulations when it revoked his OSUP, including whether Applicant received written notice of the revocation; whether any notice provided the reason(s) for revocation; and whether Applicant was given an informal interview promptly so that he could respond to the reason(s) for revocation. (ECF No. 24). Respondents filed the Supplemental Response on August 27, 2026 (ECF No. 25). Respondents "concede that, at the time of his arrest, Petitioner was not provided with a notice of revocation of release or a prompt informal interview. However, to the extent that the process Petitioner received was not in compliance with the regulations, Petitioner has not shown that any procedural flaw is sufficient to justify his immediate release." (*Id.* at 2).

Applicant was given the opportunity to file a reply, but he did not do so within the time allowed. Applicant, however, submitted a Request to Make a Determinative Decision (ECF No. 26-1), asking the Court to promptly decide whether he should be released from custody.

## II. DISCUSSION

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411

U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief is warranted only if Applicant "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

The procedures for revoking an OSUP are governed by 8 C.F.R. § 241.4(l) and 8 C.F.R. § 241.13(i). Revocation of release requires that (1) the noncitizen "be notified of the reasons for revocation of his or her release" and (2) the noncitizen be "afforded an initial informal interview promptly after his or her return to . . . custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); *see also Olivera-Martinez v. Valdez*, No. 26-cv-01120-NYW, 2026 WL 1361538, at 3 n.2 (D. Colo. May 15, 2026) (noting that courts routinely interpret this regulation as requiring notice and informal interview upon revocation of release regardless of reason for revocation). Additionally, § 241.4(l)(2) requires that the decision to revoke release must be made either by the Executive Associate Commissioner or, under certain circumstances, a district director. 8 C.F.R. § 241.4(l)(2).

Courts in this District, along with other courts across the country, have held that (1) ICE violating its own regulations in detaining an individual is a due process violation, and (2) this violation makes the individual's detention unlawful so that the proper remedy is release. *See Olivera-Martinez*, 2026 WL 1361538, at *3; *see also Sanchez v. Bondi*, No. 25-cv-02287-CNS, 2025 WL 3484756, at *2 (D. Colo. Dec. 4, 2025) (ordering release of noncitizen when ICE failed to follow its own regulations in revoking supervised release) (collecting cases); *Nguyen v. Hyde*, 788 F. Supp.3d 144, 152–53 (D. Mass. 2025) ("ICE, like any agency, has the duty to follow its own federal regulations. . . . As here, where an

immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal state and ICE fails to adhere to it, the challenged action is invalid." (cleaned up) (citing *Zadvydas*, 533 U.S. at 690)); *Guerra v. Bondi,* No. 25-cv-01240-G, 2026 WL 114258, at *8 (W.D. Okla. Jan. 15, 2026) ("Habeas corpus relief is warranted" where "Respondents' failure to comply with § 241.4(l)(3) resulted in redetention, accompanied by a lack of notice or a meaningful opportunity to respond."); *Funes v. Francis*, 810 F. Supp.3d 472, 502 (S.D.N.Y. 2025) (finding that the court must order the Applicant's release in "align[ment] with numerous cases releasing habeas Applicants held in custody following procedural due process violations" (collecting cases)); *Grigorian v. Bondi*, No. 25-cv-22914-RAR, 2025 WL 2604573, at *9–10 (S.D. Fla. Sept. 9, 2025) ("The failure to provide Applicant with an informal interview promptly after his detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates both ICE's own regulations and the Fifth Amendment Due Process Clause. This compels Applicant's release. Courts around the country have concluded likewise." (collecting cases)).

Applicant argues that revocation of his supervised release did not comply with the above regulations. (ECF No. 1 at 5-6, alleging that his "re-arrest and re-detention" occurred "without notice or process at any time" and that "Respondents failed to follow the required procedures for revoking his OSUP – namely notice, an interview, and an opportunity to contest the basis for revocation."). Respondents do not dispute Applicant's allegations or argue that the applicable regulations were complied with before Applicant's supervised release was revoked. (*See* ECF No. 14 at 2-3; ECF No. 25 at 2). *See also*

*Rivera v. Baltazar, et al.,* Civil Action No. 26-cv-02540-NYW, 2026 WL 2130599 (D. Colo. July 24, 2026) (finding Respondents' failure to provide Court with any documentation of Applicant's revocation of supervised release or any information as to who authorized the revocation or for what reason was sufficient to find procedural due process violation).

Consistent with the above authority, the Court finds that Respondents' failure to adhere to the required process in revoking Applicant's OSUP is a procedural due process violation so that Applicant's detention is unlawful and that release is the appropriate remedy. *See Olivera-Martinez*, 2026 WL 1361538, at *3; *see also Virachak v. Baltazar,* No. 26-cv-00391-STV, 2026 WL 746285, at *5 (D. Colo. Mar. 17, 2026) ("where respondents fail to provide notice of revocation and conduct an interview with a petitioner as is required by 8 C.F.R. § 241.4(1) and § 241.13(i), the [p]etitioner's immediate release is required to return him to the status quo ante—the last uncontested status which preceded the pending controversy."). Accordingly, this Court respectfully GRANTS the Application in part and ORDERS Respondents to immediately release Applicant, subject to the terms of his previous order of supervision, within 48 hours of the entry of this Order.

## III. CONCLUSION

For the reasons set forth above, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) is **granted in part**. It is further

**ORDERED** that Respondents are **DIRECTED** to immediately release Applicant. subject to the terms of his previous order of supervision, within 48 hours of the entry of this Order. It is further

**ORDERED** that Respondents **SHALL SUBMIT** a declaration pursuant to 28 U.S.C. § 1746 within three business days of this Order affirming Applicant's release from custody.

DATED September 8, 2026.

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge